IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO.: 5:09-CR-216-FL-3

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| ANES SUBASIC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This cause comes before the Court upon Defendant's motion to suppress. (DE-1179).[1] The Government has responded to this motion (DE-1231), and the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this motion has been referred to the undersigned for the entry of a memorandum and recommendation.

**BACKGROUND**

On November 24, 2010, Defendant and several co-defendants were charged in the second superseding indictment with, *inter alia*: 1) conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A; and 2) conspiracy to murder, kidnap, maim and injure persons in violation of 18 U.S.C. § 956(a). (DE-670).

In the instant motion, Defendant seeks the suppression of "all and any evidences seized with two (2) search warrants issued to I.C.E. (Department of Homeland Security) on 9.23.2009 and F.B.I. on 9.25.2009." (DE 1197-1, pg. 1). The facts underlying the issuance of these two search warrants shall now be summarized.

Special Agent ("SA") Christopher Brant, Immigration and Customs Enforcement ("ICE"), sought the issuance of a warrant to search Defendant's home on September 23, 2009.

---
[1] Defendant has supplemented his motion numerous times. (DE's 1180-1183, 1197).

*See*, In Re: Search Warrant Issued for 248 Adefield Lane, Holly Springs, North Carolina, 5:09-M-1836, (DE-3). In the affidavit submitted to support his application, SA Brant sets forth two crimes: 1) fraud in procuring citizenship; and 2) fraud in procuring legal permanent resident ("LPR") status. *Id*. at ¶¶ 2-6. Specifically, SA Brant stated that the purpose of his application was to seize evidence of violations of: 1) 18 U.S.C. §§ 1015(a)[2] and 1425(a)[3], which make it a crime to procure United States Citizenship through fraud; and 2) 18 § 1546 (a)[4], which makes it a crime to procure LPR status through fraud. SA Brant further alleged that evidence of these crimes would be found at Defendant's residence.

SA Brant set out the process by which one becomes a citizen or LPR and the particulars of Defendant's own applications for the same. Significantly, SA Brant described three separate forms completed by Defendant. *Id.* at ¶¶ 21-23. As to each form, SA Brant detailed the questions asked of Defendant in regard to his military and criminal history, and Defendant's response thereto. *Id.* On all three forms, Defendant denied any prior military service. *Id.* He also denied any prior arrests or criminal charges. *Id.*

---

[2] Title 18 U.S.C. § 1015(a) prohibits making "any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens;"

[3] Title 18 U.S.C. § 1425(a) prohibits procuring or attempting to procure, "contrary to law, the naturalization of any person, or documentary or other evidence of naturalization of citizenship;"

[4] Title 18, U.S.C. § 1546(a) states "whoever knowingly...utters, uses, attempts to use, possesses, obtains, accepts, or receives any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States knowing it.,.to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained. . . . [s]hall be fined under this title or imprisoned . . ."

Defendant's assertions on these forms as to his military service and criminal history were clearly fraudulent. Specifically, SA Brant sets out in his affidavit Defendant's military and criminal history. *Id.* at ¶¶ 24-37. This history was obtained at the direction of the ICE attaché located in Vienna, Austria. *Id.* at ¶¶24-25. On or about August 17, 2009 the Raleigh Resident Agent in Charge of the ICE office there requested information, through the Federal Bureau of Investigation ("FBI"), from the Bosnian authorities concerning Defendant's criminal history and possible military background. *Id.* That information was received on September 11, 2009 and provided to Judge Gates in SA Brant's probable cause affidavit. *Id.* It detailed several crimes in Bosnia for which Defendant was listed as the person having committed them and listed him as a fugitive. *Id.* at ¶¶ 21-37. SA Brant's affidavit informed Judge Gates that

> A comparison of the dates of birth listed in [Defendant's] A-File relative to the dates of birth listed in paragraphs 27-37 revealed the following: five (5) matched exactly, four (4) differed by one calendar day but matched the month and year exactly and one (1) differed by several days but matched the month and year exactly. The last date is believed to be a typo, because if a single digit were added to the date, it would match exactly.

*Id*. at fn. 6

In addition, the affidavit noted that a report from the Republic of Srpaska, Ministry of Interior, Center of Public Security, Banja Luka stated that Defendant had completed military service.

Finally, based on investigation conducted with Wake County Real Estate records and the North Carolina Department of Motor Vehicles, SA Brant established that Defendant resided at 248 Adefield Lane, Holly Springs, North Carolina. *Id*. at ¶¶ 16, 38 – 41.

Based on SA Brant's allegations, United States Magistrate Judge James Gates issued a search warrant the same day. In Re: Search Warrant, 5:09-M-1836, (DE-4). Among other

3

things, this warrant authorized the collection of any material related to immigration, criminal history, military history, travel, and documents in a foreign language that would need translated before their relevance was known. *Id.* at ¶¶ 43-44.

This search warrant was executed on September 25, 2009. During the search, items believed to be evidence of terrorism crimes were discovered. *See*, In Re: Search Warrant Issued for: 248 Adefield Lane, Holly Springs, North Carolina, 5:09-M-1838, (DE-3). The original warrant did not cover such evidence. As a result, a second warrant application was submitted. This application was submitted by SA Gregory Alznauer of the Federal Bureau of Investigation ("FBI"). *Id.* at (DE-3). Among other things, in his application, SA Alznauer noted that:

> During the search of 248 Adefield Lane, Holly Springs, North Carolina, for the items listed in that search warrant, agents came across items believed to be evidence of the terrorism crimes charged by the grand jury against [Defendant]. For example, agents found literature espousing violent jihad, military tactics training manuals for, among other things, booby traps and unconventional warfare, a graduation certificate for the escape and evasion school referenced above, and sniper-related items and documentation concerning [Defendant's] purchase of sniper-related items, as described above. Some of the jihadist literature found was printed off a computer from the internet. There is a computer in the household. These items directly relate to many of the factual allegations alleged by the grand jury against Defendant. Once these items were found to not fall within the scope of the search warrant being executed, the review of these items ceased, and a supplemental warrant is now sought . . . .
>
> Based on the foregoing, there is probable cause to believe that evidence will be found at the described property and the residence and outbuildings at 248 Adefield Lane, Holly Springs, North Carolina . . . regarding criminal violations of Title 18, U.S. Code 2339A, conspiracy to contribute material support to terrorists, and Title 18, U.S. Code 956(a), conspiracy to kill, kidnap, maim, or injure persons in a foreign country.
>
> (DE-3, ¶¶ 16-17).

4

Moreover, SA Alznauer's observations played out against the other information provided to Judge Gates in the affidavit for the FBI Warrant. Namely:

> On 10 March 2007, [Defendant] made an online purchase of a book entitled Sniper Training FM 23-10. On 12 March 2007, [Defendant] inquired as to the availability and pricing of bolt action Savage .308 caliber rifles, or the Remington 700 XCR tactical long range weapon. On 27 March 2007, [Defendant] ordered a sniper rifle scope, a sniper kill-flash anti-reflection device, a sniper sun shade, a lens cap kit, and a mil-dot master slide rule online. On 09 May 2007, [Defendant] ordered .308 ammunition (7.62 mm steel core).

*Id.* at ¶ 11.

Judge Gates issued a second search warrant on September 25, 2009. In Re: Search Warrant, 5:09-M-1838, (DE-4). This warrant allowed the FBI to search and seize evidence of conspiracy to provide material support to terrorists, and to murder persons abroad. *Id*. It was under the authority of this second warrant that materials advocating violent jihad, military training manuals, and other evidence, were seized.

As mentioned above, the instant motion challenges the validity of the September 23 and 25, 2009 warrants. Specifically, Defendant contends that the search warrants lacked probable cause and that "[l]aw enforcement officers grossly exceeded the scope of the search warrant and made non-reasonable seizure." (DE 1179-3, pg. 1).

## ANALYSIS

### Probable Cause Standard

"In reviewing the magistrate's probable cause determination, [the court] must accord 'great deference' to the magistrate's assessment of the facts presented to him." United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990). The probable cause standard for the issuance of a

5

search warrant is based on a totality of the circumstances approach. United States v. Williams, 974 F.2d 480, 481-482 (4th Cir. 1992). Specifically, "the standard allows a magistrate to review the facts and circumstances as a whole and make a common sense determination of whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* at 481 (*quoting* Illinois v. Gates, 462 U.S. 213, 238 (1983)). Thus, to meet this threshold inquiry, "the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." *Id.* (*quoting* Texas v. Brown, 460 U.S. 730, 742 (1983) (*plurality opinion*)). Judged by this standard, both affidavits provided sufficient information to support Judge Gate's determination of probable cause.

The evidence in support of both warrants has already been described, above. In summary, the existence of any criminal charges or arrests, and/or military history, contrary to Defendant's blanket denials of the same in his immigration documents, clearly established probable cause to believe Defendant committed fraud. Thus, SA Brant marshaled and presented to Judge Gates information which led inexorably to the conclusion that Defendant provided false answers to questions material to a determination of immigration status. This alleged fraud violated several laws, namely, 18 U.S.C. §§ 1015(a); 1425(a); and 1546(a). Moreover, SA Brant provided Judge Gates with ample information that evidence of these crimes would be located at the premises to be searched. In Re: Search Warrant, 5:09-M-1836, (DE-3), ¶¶ 16, 38–41. Thus, SA Brant's application established that there was at least a fair probability that contraband or evidence of a crime would be found at Defendant's residence.

SA Alznauer's application also clearly establishes probable cause. In that application, during the execution of a valid search warrant, evidence of a conspiracy to provide material support to terrorists, and to murder persons abroad was observed by the investigating agents.

Again, these observations established that there was at least a fair probability that contraband or evidence of other crimes would be found at Defendant's residence. Finally a review of the returns filed for both search warrants reveals that neither search "exceeded the scope of the search warrant." *See*, 5:09-M-1836 (DE-5); 5:09-M-1838 (DE-5). On the contrary, the fact that a second warrant was sought on September 25, 2009 clearly indicates that law enforcement officials were strictly adhering to the scope of both warrants.

Alternatively, the undersigned also finds that Defendant's motion is without merit because the good faith exception applies. The Supreme Court established a good faith exception to the exclusionary rule in United States v. Leon, 468 U.S. 897 (1984). The Leon Court noted that:

> [i]f the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.
>
> *Id.* at 919 (*quoting*, United States v. Peltier, 422 U.S. 531, 542(1975)).

Thus, as long as it is objectively reasonable for an officer to rely on a magistrate's probable cause determination, the officer has "'acted in good faith in conducting [a] search.'" *Id.* at 922 (quoting United States v. Ross, 456 U.S. 798, 823 n.32 (1982)). However, the Leon Court has also recognized four situations in which an officer's reliance on a magistrate's determination would not be considered reasonable for the purposes of the good faith exception:

> (1) If the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;
>
> (2) The issuing magistrate judge wholly abandoned his detached and neutral judicial role;

7

>    (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in the existence entirely unreasonable;
>
>    (4) the warrant is so factually deficient - - *i.e.*, in failing to particularize the place to be searched or the things to be seized - - that the executing officers cannot reasonably presume it to be valid.
>
> <u>Leon</u>, 468 U.S. at 923.

Both search warrant applications have been reviewed by the undersigned, and their contents have already been summarized. None of these exceptions apply to either application.

Nonetheless, Defendant contends that:

> I.C.E. agent Christopher E. Brant in his soul "knew" that this information, documents from Republic Srpska fabricated and false, but even so he purposely presented them to magistrate Judge Gates to obtain a pitiable and unnecessary warrant for search of my home.
>
> How can I from my S.A.M. position prove, if Agent Brant doesn't want to admit, that he:
>
> 1. Knowingly and intentionally or with reckless disregard for the truth
> 2. Made affidavit with false statements
> 3. Material to the issue of probable cause
>
> (DE 1179-3, pg. 4).

Thus, Defendant argues that both warrants were issued based on information SA Brant knew was false or would have known was false except for his reckless disregard for the truth. *Id.* However, Defendant's factual allegations in support of this argument are rambling and disjointed. Other than baldly asserting that he has no criminal history and was never in the military, Defendant provides little support for his argument that SA Brant recklessly disregarded the truth. Nonetheless, as a *pro se* litigant, Defendant is entitled to have his pleadings construed more liberally than those drafted by attorneys. *See* <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).

8

Case 5:09-cr-00216-FL   Document 1307   Filed 08/12/11   Page 8 of 12

In that light, Defendant appears to allege that the information about his criminal history and military record should not have been presented to Judge Gates because the convictions were canceled, overturned, or stricken. *See*, *e.g.*, DE 1179-3, pg 11. It is clear that even if the information about Defendant's arrests and military service was inaccurate, SA Brant had ample reason to believe it to be true when he submitted it to Judge Gates. For example, while the Government submitted the application for the search warrant on September 23, 2009, the notice for Defendant's arrest was not canceled until November 2, 2009. (DE-1231, pg. 4, fn. 1). Thus, the information about Defendant's convictions was accurate when presented.

Furthermore, it must be remembered, the question Defendant was asked on the various applications was "[h]ave you been charged with a violation of law?" Defendant untruthfully answered these questions by stating: "I have not....". In Re: Search Warrant, 5:09-M-1836, (DE-3, ¶¶ 21-23). Likewise, Defendant answered "N/A" when questioned about his prior military service. *Id*. at ¶ 21(e). Even assuming, for the sake of argument, SA Brant did know the charges had been suspended; the omission of that fact would not have defeated probable cause for the warrant. The warrant was predicated on the evidence that Defendant completed immigration documents, answering questions about his prior military and criminal history by flatly denying the existence of either. Whether the charges were falsely alleged by Republic of Srbska war criminals or suspended because of an applicable statute of limitations is immaterial.[5] Defendant was still compelled to address their existence in his immigration filings. Rather than explain the circumstances behind these convictions, Defendant denied their existence altogether. In short, Defendant has not established any Leon exception applies.

---

[5] The undersigned notes that the issue of whether "evidence acquired from Serbia or Serbian witnesses is unreliable because the evidence pertains to things that happened during a time of war . . . [and because] the Serbian police are corrupt . . ." are issues that have been expressly reserved for trial. (DE-1269).

9

Finally, although inartfully alleged, Defendant's motion to suppress might be read as attacking the veracity of the information the officers supplied to the Judge Gates and thus implicate Franks v. Delaware, 438 U.S. 154 (1978). Accordingly, the court will address this issue as if it has been raised. In Franks, the Supreme Court stated:

> The bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search. In deciding today that, in certain circumstances, a challenge to a warrant's veracity must be permitted, we derive our ground from language of the Warrant Clause itself, which surely takes the affiant's good faith as its premise: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." Judge Frankel, in United States v. Halsey, 257 F.Supp. 1002, 1005 (S.D.N.Y.1966), aff'd, Docket No. 31369 (CA2, June 12, 1967) (unreported), put the matter simply: "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing" (emphasis in original). This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true. It is established law, see Nathanson v. United States, 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159 (1933); Giordenello v. United States, 357 U.S. 480, 485–486, 78 S.Ct. 1245, 1249–1250, 2 L.Ed.2d 1503 (1958); Aguilar v. Texas, 378 U.S. 108, 114–115, 84 S.Ct. 1509, 1513–1514, 12 L.Ed.2d 723 (1964), that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter. If an informant's tip is the source of information, the affidavit must recite "some of the underlying circumstances from which the informant concluded" that relevant evidence might be discovered, and "some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable.' " Id., at 114, 84 S.Ct., at 1514. Because it is the magistrate who must determine independently whether there is probable cause, Johnson v. United States, 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–369, 92 L.Ed. 436 (1948); Jones v. United States, 362 U.S. 257, 270–271, 80 S.Ct. 725, 735–736, 4 L.Ed.2d 697 (1960), it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment.

10

> Franks, 438 US at 164-165.

Nonetheless, there is "a presumption of validity with respect to the affidavit supporting the search warrant . . ." Franks, 438 U. S. 172. Defendant has not overcome that presumption. In order to obtain a Franks hearing to attack a facially sufficient warrant affidavit, a defendant must make a substantial showing that a false statement critical to a finding of probable cause was knowingly and intentionally, or with reckless disregard for the truth, included in the warrant affidavit. *See* Franks, 438 U.S. at 155–56; United States v. Clenney, 631 F.3d 658, 663 (4th Cir. 2011). "This showing must be more than conclusory and should include affidavits or other evidence to overcome the presumption of the warrant's validity." Clenney, 631 F.3d at 663 (internal quotation marks and alterations omitted). Where a defendant attacks an affidavit based on omissions, he must show that "the omissions were 'designed to mislead, ... or made in reckless disregard of whether they would mislead' and that the omissions were material, meaning that 'their inclusion in the affidavit would defeat probable cause.'" *Id.* at 664 (*quoting* United States v. Colkley, 899 F.3d 297, 301 (4th Cir. 1990)) (emphasis omitted). Defendant has not made the "substantial showing" necessary under Franks to demonstrate that either SA Brant or SA Alznauer acted improperly in preparing the affidavits at issue. *See*, United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990). Indeed, Defendant points to no specific evidence of a knowing, intentional, or reckless inclusion or omission. Moreover, even if the additional facts cited by Defendant were included in the affidavits, the probable cause calculus would nonetheless have remained unchanged. As noted above, even if Defendant's arrests and convictions were subsequently canceled, overturned, or stricken, that does not alter the fact that Defendant fraudulently stated on various immigration documents that he had never been charged

11

with any violation of law or served in the military. Under these circumstances, <u>Franks</u> is inapplicable. *See* <u>United States v. Friedemann</u>, 210 F.3d 227, 229–230 (4th Cir. 2000). *Cf.* <u>Franks</u>, 438 U.S. at 171–72("[I]f, when material [in the warrant affidavit] that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.").

## **CONCLUSION**

For the foregoing reasons, it is RECOMMENDED that the Defendant's Motion to Suppress evidence that was seized at of 248 Adefield Lane, Holly Springs, North Carolina (DE-1179) be DENIED.

SO RECOMMENDED, in Chambers at Raleigh, North Carolina on Thursday, August 11, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE

12

Case 5:09-cr-00216-FL   Document 1307   Filed 08/12/11   Page 12 of 12