IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO.5:09-CR-216-FL-3

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | ORDER |
| ANES SUBASIC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress (DE # 1179).[1] Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge William A. Webb entered a memorandum and recommendation ("M&R") wherein he recommends that the court deny defendant's motion. Defendant timely filed objections to the M&R, and the government filed response.[2] In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge, and denies the motion to suppress.

## STATEMENT OF THE CASE

Defendant is charged along with seven co-defendants in a thirteen (13) count second

---

[1] Defendant's motion to suppress is supplemented by an immense amount of exhibits, lodged on the docket at entries 1180 through 1183. Defendant's motion also incorporates by reference the exhibits filed in docket entries 1111 through 1118. Additionally, defendant filed a corrected translation of his motion to suppress on June 27, 2011, lodged on the docket at entry 1197. The corrected version is virtually identical to the original, with only minor alterations.

[2] Defendant also filed supplement to his objections after the fourteen (14) day period for filing objections had passed. Review of defendant's motions has been made unnecessarily difficult and unwieldy because of defendant's practice of filing numerous supplements. The court initially allowed the filing of supplements in large part due to defendant's decision to proceed *pro se* after certain motions deadlines had passed. This practice is no longer warranted, and there is no showing why defendant could not file this supplement in a timely manner as a part of his objections. Complaints of insufficient time to draft his motions are not a basis for filing numerous supplements. Keeping in mind defendant's *pro se* status, the court consider the instant supplement. Defendant is admonished that in the future, the filing of unnecessary supplements to his filings will not be permitted. In extreme circumstances where supplement is necessary, defendant must seek leave of court before filing, demonstrating why supplement is necessary. His failure to do so likely will result in such supplement summarily being stricken from the record.

superseding indictment returned November 24, 2010. Counts one and two allege that beginning no later than November 9, 2006, and continuing through at least July 2009, the eight named co-defendants conspired with each other to provide material support to terrorists in violation of 18 U.S.C. § 2339A, and commit outside of the United States an act that would constitute murder, kidnaping, maiming, and injuring persons in violation of 18 U.S.C. § 956(a).[3] "Violent jihad" and actions taken in furtherance thereof are alleged as overt acts in the conspiracies.[4] Counts twelve and thirteen charge that on or about December 2, 2003, defendant knowingly made false statements while procuring and attempting to procure naturalization, and on his formal application for naturalization.[5]

On May 13, 2011, defendant elected to represent himself. The court appointed previous counsel to serve as stand-by counsel, who continues to assist defendant. Defendant filed the instant motion to suppress any and all evidence seized with two search warrants, the first issued to the Department of Homeland Security ("ICE") on September 23, 2009, and the second issued to the Federal Bureau of Investigation ("FBI") on September 25, 2009.

The facts underlying the warrants are sufficiently set forth in the M&R, however, the court summarizes them briefly. (See M&R 1-5.) On September 23, 2009, Special Agent Christopher Brant ("Brant"), ICE, sought a warrant to search defendant's home. Brant's affidavit set forth two crimes: fraud in procuring citizenship and fraud in procuring legal permanent resident ("LPR")

---

[3] Pursuant to plea agreements conditionally approved by the court on February 9, 2011, and June 7, 2011, the government agrees to dismiss counts three through eleven against Daniel Boyd and counts two, four, and eight, against Zakariya Boyd.

[4] Defendant's trial on counts one and two has been severed from his co-defendants' trial, pursuant to order lodged on the docket at entry 1283.

[5] Counts twelve and thirteen have been severed for separate trial, pursuant to order entered January 28, 2011, lodged on the docket at entry 750. Trial on these counts has been reassigned to Senior District Judge Malcolm J. Howard.

2

status. Specifically, Brant sought evidence of violations of federal statutes which make it a crime to procure citizenship through fraud, and Brant alleged that evidence of such crimes would be found at defendant's residence. Brant pointed out that three forms defendant completed for LPR status included answers that appeared to be untrue, specifically answers to questions pertaining to defendant's prior military service and criminal history.[6] Brant's affidavit included descriptions of defendant's military and criminal history, which histories were obtained from an ICE attache in Vienna, Austria. Based on Brant's allegations, United States Magistrate Judge James Gates issued a search warrant. See In re: Search Warrant Issued for: 248 Adefield Lane, Holly Springs, North Carolina, 5:09-MJ-1836. The warrant authorized collection of material related to immigration, criminal history, military history, travel, and documents in a foreign language that would need to be translated to determine their relevance.

When the ICE warrant was executed on September 25, 2009, items believed to be evidence of crimes involving national security were discovered during the search of defendant's house. The original warrant did not authorize the collection of such evidence, and a second warrant application was submitted by Special Agent Gregory Alznauer ("Alznauer"), FBI. Alznauer noted that during the ICE search, agents came across items including but not limited to: literature espousing violent jihad, military tactics training manuals, and sniper related items. Based on this evidence, as well as information contained in Alznauer' affidavit, Judge Gates issued the second search warrant on

---

[6] Defendant does object to one of the magistrate judge's factual findings in the M&R, the finding that "Defendant's assertions on [the immigration forms] as to his military service and criminal history were clearly fraudulent." (M&R 3.) The court declines to adopt this finding of the magistrate judge, and makes no determination as to the alleged fraudulence of defendant's answers on the immigration forms. The jury will make this determination at trial on counts twelve and thirteen. However, the rest of the facts regarding the search warrants as laid out in the M&R are not objected to, and the court adopts them in full.

3

September 25, 2009. See In re: Search Warrant Issued for: 248 Adefield Lane, Holly Springs, North Carolina, 5:09-MJ-1838 (DE # 3). The warrant authorized collection of any and all records, documents and materials that constituted or contained evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 2339A and § 956A. See id.

## DISCUSSION

A. Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

B. Analysis

1. Probable Cause

Most of defendant's objections assert that there was not probable cause for the magistrate judge to issue the search warrants. Defendant's most vehement objections are that he never completed military service, any criminal charges against him were dismissed on or before November 2009, and that the sources from which Brant obtained information regarding defendant's military and criminal history were unreliable.

4

The court affords great deference to the magistrate judge's assessment of the facts presented to him when reviewing a probable cause determination. United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990). The standard for determining whether probable cause exists is based on a totality of the circumstances. United States v. Williams, 974 F.2d 480, 481-82 (4th Cir. 1992). In determining whether probable cause exists, the magistrate judge may review the facts and circumstances as a whole and make a common sense determination of whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Id. (citations omitted).

The good faith exception to the probable cause requirement provides that as long as it is objectively reasonable for an officer to rely on a magistrate's probable cause determination, the officer acted in good faith in conducting the search. See United States v. Leon, 468 U.S. 897, 919 (1984). The Leon court recognized four situations in which an officer's reliance on a magistrate's determination would not be reasonable: (1) if the magistrate issuing the warrant was misled by information in an affidavit the affiant knew was false or would have known was false except for reckless disregard for the truth; (2) the issuing magistrate judge wholly abandoned his detached and neutral judicial role; (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in the existence entirely unreasonable; or (4) the warrant is so factually deficient that the executing officer could not presume it to be valid. Id. at 923.

The court agrees with the magistrate judge that both warrants provided sufficient information to support Judge Gates's determination of probable cause and that none of the Leon exceptions apply. As to the magistrate judge's findings of probable cause, the evidence in support of both warrants clearly supported a "common sense determination" that there was a "fair probability"

evidence of the alleged crimes would be found in defendant's home. See Williams, 974 F.2d at 481-82.

Defendant's objections are based on two arguments. The first appears to argue that Brant knowingly relied on false information in obtaining the ICE warrant, because defendant contends his prior criminal charges were dismissed before November 2009. In the government's response in opposition, it notes that it contacted Interpol with regard to defendant's contentions that certain charges against him were suspended. (Resp. 4 n.1.) However, as the magistrate judge noted, whether or not the charges were suspended does not affect Judge Gates's findings of probable cause for the ICE warrant. There was sufficient evidence for Brant to believe that defendant answered untruthfully when asked on the immigration forms if he had ever been charged with a violation of law. The questions on these forms do not ask about the disposition of criminal charges, simply whether the applicant has ever been charged with criminal activity.[7] Neither is there any evidence that Brant knew the evidence suggesting defendant's criminal history or military service was incomplete. The court agrees with the magistrate judge that no Leon exception applies.[8]

Defendant's second argument regarding probable cause is that Brant relied on unreliable information in obtaining the warrant. As the magistrate judge noted, the court has repeatedly notified defendant that this argument is an issue that is expressly reserved for trial. Regardless, defendant's allegations regarding the reliability of the documents do not alter the fact that there was probable

---

[7] The court reaches the same result with regard to questions regarding defendant's alleged military service. Defendant's objections on this point are conclusory; he contends he never served in the military, while certain documents suggest that he did. Defendant is free to argue about the unreliability of these documents at trial, particularly on cross examination.

[8] The magistrate judge also engaged in an analysis pursuant to Franks v. Delaware, 438 U.S. 154 (1978). While defendant expresses his displeasure with this portion of the M&R and the magistrate judge's analysis, any objection is unspecific and was not considered. The court adopts the magistrate judge's Franks analysis in its entirety.

6

cause for the search warrants. Defendant has provided the court with an overwhelming amount of information he contends supports his argument that any evidence from the Republic of Srbska is unreliable.[9] At most, defendant's objections with respect to this issue are conclusory arguments that certain documents or information from certain sources are unreliable because of events that occurred during a period of wartime. The court does not find at this time that the information relied on by Judge Gates in finding probable cause for the ICE warrant was so unreliable so as to invalidate the warrant. As noted earlier, defendant is free to argue about the unreliability of certain evidence or witnesses at trial. Accordingly, defendant's objections that the warrants were not supported by probable cause are overruled.

2. Scope of Warrant

Defendant contends that the searches executed pursuant to the ICE and FBI warrants exceeded their scope. When a search is conducted pursuant to a warrant, it "is limited in scope by the terms of the warrant's authorization." United States v. Williams, 592 F.3d 511, 519 (4th Cir. 2010) (citing United States v. Phillips, 588 F.3d 218, 223 (4th Cir. 2009)). However, the terms of the warrant are not to be interpreted in a "hypertechnical" manner. Id. (citing United States v. Robinson, 275 F.3d 371, 380 (4th Cir. 2001)). Rather, the terms of the warrant should be read with a "commonsense and realistic" approach, to avoid turning a search warrant into a "constitutional straight jacket." Id. (citations omitted).

With these principles in mind and after *de novo* review of the numerous exhibits defendant has submitted in support, the court overrules defendant's objections as to the scope issue. The materials defendant included in the exhibits lodged on the docket at entries 1180 through 1183

---

[9] See Exhibits filed at docket entries 1111 through 1118.

appear to be within the scope of the warrants. Defendant asks why agents would want pictures of his father and mother or copies of song lyrics that defendant had in his possession. The court declines to engage in a hypertechnical analysis of how these items are within the scope of the warrants as such analysis is not required under the law. Suffice it to say, however, that since the scope of the ICE warrant included documents relating to immigration applications, and the immigration applications required personal and biographical data, including familial data, information regarding defendant's parents would be within the warrant's scope.

As for the other evidence seized, defendant has not shown that the seizure was outside of the scope of either warrant. The enormous collection of exhibits defendant submitted to argue that the search exceeded the scope of the warrant does not designate which items defendant believes were seized pursuant to which warrants or what defendant's specific arguments are as to why a particular item seized was outside the scope. Examination of each warrant reveals that the searching agents complied appropriately with the scope, and defendant has presented no evidence to suggest that the agents exhibited flagrant disregard for the terms of the warrant. See United States v. Chandia, 514 F.3d 365, 374 (4th Cir. 2008). In fact, the agents demonstrated great deference to the scope of the ICE warrants when they stopped the initial ICE search to apply for the FBI warrant so that they could properly search for items related to the conspiracy charges. Additionally, law enforcement officers may seize an item pursuant to a warrant even if the warrant does not expressly mention and painstakingly describe it. Phillips, 588 F.3d at 225. "A warrant need not - and in most cases, cannot - scrupulously list and delineate each and every item to be seized." Id.

In supplement to his objections, defendant appears to argue for the first time that the search

8

warrant was overly broad.[10] Defendant's arguments are unconvincing and cite dicta from cases that are not controlling in this circuit and involve distinguishable sets of facts. See, e.g., United States v. Leary, 846 F.2d 592, 600-01 (10th Cir. 1988) (finding a general search of a business office pursuant to two federal statutes overbroad); United States v. Cardwell, 680 F.2d 75 (9th Cir. 1982) (finding a general search of all business papers believed to be instrumentalities of tax fraud overbroad).[11]

The warrants for the ICE and FBI searches were sufficiently particular. Defendant specifically attacks the FBI warrant as overbroad, which warrant authorized search for various materials that could contain or constitute evidence of violations of 18 U.S.C. § 2339A and § 956(a). Upon close review of the language of the warrant, the court finds that it limited the agents' search to evidence relating to a "specific illegal activity," specifically violations of the aforementioned statutes. See United States v. Dickerson, 166 F.3d 667, 694 (4th Cir.1999) rev'd on other grounds by Dickerson v. United States, 530 U.S. 428 (2000). The warrant did not simply authorize search of items relating to "conspiracy" charges; rather, the warrants authorized specific searches for evidence of specific crimes. Accordingly, to the extent defendant raised objections as to the warrant's overbreadth, such objections are overruled.

3. General Objections

---

[10] Defendant's motion to suppress includes one sentence regarding facially overbroad warrants (DE # 119-3 p. 33; DE # 1197-1 p. 33), however the motion did not elaborate on this argument. Therefore, defendant's arguments on this point are considered raised for the first time in his supplement to his objection.

[11] Defendant also argues in his supplement that the search and seizure of certain books was in violation of the First Amendment. The magistrate judge did not address this argument, nor did defendant raise it in his objections. The court has reviewed the case law defendant has cited and finds it irrelevant. For example, Quantity of Copies of Books v. States of Kansas, 378 U.S. 205 (1964) deals with obscenity issues, and not the seizure of specific evidence relevant to specific crimes involving issues of national security.

9

In addition to the specific objections already discussed, defendant lodges several general objections that express his deep dissatisfaction with the findings in the M&R. The court does not address general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). However, some of defendant's objections are more appropriately characterized as nothing more than insults toward the court. While defendant remarks that some of his language is just his "expression" of his argument and not his "direct words" to the magistrate judge, the court fails to see the difference. The use of unnecessarily inflammatory and derogatory language will not be tolerated. Baseless accusations in written objections that the court did not thoroughly review materials, or insults regarding a judge's intelligence or jurisprudence are highly inappropriate.

4. Motion to Compel

At the conclusion of his objections, defendant requests the government to produce the evidence it cites in footnote 1 of its response regarding the Interpol inquiry of defendant's criminal history. (DE # 1365 p. 8.) Defendant's request in this regard sounds as a motion to compel production to him of this evidence. While the deadline for filing motions to compel has passed, the government notes in its filing that it did not receive the information until it began preparing its response to defendant's motion.

This raises issues for decision having more to do with matters concerning counts twelve and thirteen, scheduled to go to trial on September 19, 2011. Defendant is directed to raise any issues of or relating to the Interpol inquiry before Judge Howard, in writing or orally at pretrial conference, in light of referral of counts twelve and thirteen for trial before him. With notice having been given that defendant seeks now to review this information, the government shall have ready response at

10

the pretrial conference in Greenville, NC.

## CONCLUSION

Upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court ADOPTS the findings and recommendations of the magistrate judge in full and DENIES defendant's motion to suppress (DE # 1179). Issues for decision of or relating to the Interpol inquiry made mention of above shall be decided by Judge Howard.

SO ORDERED, this the 10th day of September, 2011.

_____
LOUISE W. FLANAGAN
Chief United States District Judge

11