IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL-3
NO. 5:16-CV-89-FL

| | | |
|---|---|---|
| ANES SUBASIC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, (DE 2224), and the government's motion to dismiss, (DE 2231). Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate James E. Gates entered memorandum and recommendation ("M&R"), (DE 2261), wherein it is recommended that the court deny petitioner's motion and grant respondent's motion. Petitioner timely filed objections to the M&R, and in this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the M&R, denies petitioner's motion, and grants respondent's motion.

## BACKGROUND

Indictment in this case was returned on July 22, 2009, which charged petitioner and his seven co-defendants with numerous terrorism-related crimes. (DE 3). Superseding indictment was returned on September 24, 2009, (DE 145), and a second and final superseding indictment was returned on November 24, 2010, (DE 670). Ultimately, petitioner was charged with conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A (count one); conspiracy to murder, kidnap, maim, and injure persons in a foreign country in violation of 18 U.S.C. § 956(a)

(count two); and unlawful procurement of naturalization as an American citizen by making false statements in an application for naturalization in violation of 18 U.S.C. § 1425(a) (counts twelve and thirteen). All defendants[1] were named in counts one and two ("the terrorism counts") while counts twelve and thirteen ("the immigration counts") confronted only this defendant.

On January 28, 2011, the court severed the immigration counts and ordered a separate trial as to those. (DE 750). A two-day <u>Faretta</u> hearing was held on May 10 and 13, 2011, in which the court granted petitioner's motion to proceed pro se, while appointing petitioner stand-by counsel. (DE 980). On August 5, 2011, the court severed petitioner's trial regarding the terrorism counts from that of petitioner's remaining, counseled co-defendants Sherifi, Hassan, and Yaghi. (DE 1283).

On September 19, 2011, jury trial lasting five days commenced as to the immigration counts against petitioner, presided over by Senior United States District Judge Malcolm J. Howard in Greenville, North Carolina ("immigration trial"). (DE 1459). On the same day, co-defendants Sherifi, Hassan, and Yaghi's trial commenced before this court at New Bern, North Carolina, lasting 17 days.[2] (DE 1463, DE 1503). On May 9, 2012, petitioner's jury trial on the remaining terrorism counts, lasting 27 days, commenced before this court ("terrorism trial"). (DE 1950).

---

[1] The following are petitioners' co-defendants in this case: Daniel Patrick Boyd ("Boyd"), Hysen Sherifi ("Sherifi"), Zakariya Boyd, Dylan Boyd, Jude Kenan Mohammad ("Mohammad"), Mohammad Omar Aly Hassan ("Hassan"), and Ziyad Yaghi ("Yaghi"). Defendants Boyd, Zakariya Boyd, and Dylan Boyd pleaded guilty and testified against defendants Sherifi, Hassan, and Yaghi at their trial, and respondent at his. Mohammad was killed in "U.S. counterterrorism operations" prior to arrest. <u>See</u> Letter from Eric H. Holder, Jr., Attorney General, United States Department of Justice, to Patrick J. Leahy, Chairman, Committee on the Judiciary, United States Senate (May 22, 2013) at 2; (<u>see also</u> DE 2191).

[2] Co-defendants Sherifi, Hassan, and Yaghi were convicted and sentenced to terms of imprisonment, and the judgments entered against each of these defendants were affirmed on appeal. <u>United States v. Hassan</u>, 742 F.3d 104 (4th Cir. 2014). At the time of sentencing, Sherifi, Sherifi's brother, and one other were involved in a plot to assassinate certain witnesses who testified at Sherifi's trial and who would eventually testify at petitioner's trial on the terrorism counts then remaining. A nine-count indictment against Sherifi and his co-conspirators was filed on February 21, 2012, and on November 8, 2012, Sherifi was found guilty on all counts following jury trial presided over by Senior United States District Judge W. Earl Britt in Raleigh, North Carolina. <u>United States v. Sherifi</u>, No. 7:12-CR-00020-BR (E.D.N.C. Nov. 8, 2012) (DE 325).

Petitioner was found guilty on the immigration counts at trial presided over by Senior District Judge Howard, and the terrorism counts at trial presided over by the undersigned. On August 24, 2012, this court sentenced petitioner on all counts, with petitioner receiving a term of imprisonment of 180 months on count one, 360 months on count two, and 120 months on counts twelve and thirteen, all terms to run concurrently. Petitioner appealed, and the Court of Appeals for the Fourth Circuit affirmed. United States v. Subasic, 568 Fed. App'x 234 (4th Cir. 2014). On February 23, 2015, the Supreme Court denied petitioner's petition for a writ of certiorari. Subasic v. United States, 135 S. Ct. 1443 (2015).

Petitioner filed the instant motion to vacate on February 25, 2016, asserting 26 claims in support of his motion.[3] On April 5, 2016, the government filed the instant motion to dismiss. Petitioner subsequently filed a response, the government replied, and petitioner filed surreply. The magistrate judge entered M&R on November 13, 2017. On December 1, 2017, petitioner filed objections to the M&R to which the government filed response.

## DISCUSSION

A.      Standard of Review

The district court reviews de novo those portions of the M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and

---

[3] Petitioner submitted in conjunction with his motion to vacate at DE 2224 an "Addendum to 2255" at DE 2224-1, a "memorandum of law" at DE 2224-2, "various appeals documents" at DE 2224-3, and a letter sent from petitioner to his appellate counsel at DE 2224-4. For ease of reference, these documents together comprise petitioner's motion to vacate, although all citations to petitioner's motion will include specific document numbers.

need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A petitioner seeking relief pursuant to 28 U.S.C. § 2255 must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rules Governing Section 2255 Proceedings, Rule 12.

B.    Analysis

In petitioner's motion to vacate, petitioner asserts 26 claims applicable to either the immigration trial, the terrorism trial, or both. The magistrate judge recommends denying petitioner's motion in that:

> claims 1 to 6 fail because they are procedurally barred for having been encompassed in petitioner's appeal and because, based on the Fourth Circuit's decision, they are meritless; claims 7 to 25 fail both because they are procedurally barred for not having been raised on appeal when they could have been and because petitioner has not shown they that they have merit; and claim 26 fails because petitioner has not shown that it has merit.

(M&R (DE 2261) at 6).

Petitioner objects to the magistrate judge's recommendation regarding each claim. The court will address each objection in turn below, and holds 1) claims 1 to 6, regarding admissibility of certain documents and testimony in the immigration trial, are either barred for having been encompassed in petitioner's appeal or are without merit; 2) claims 7 to 25 are either barred for not having been raised on appeal or are without merit; and 3) petitioner's claims for ineffective assistance of appellate counsel, including claim 26, are without merit.

    1.       Claims 1 to 6 are either barred or are without merit.

Petitioner's first trial, the immigration trial, focused on whether petitioner made false statements to immigration officials on his path to citizenship. Petitioner was indicted for representing on his formal application for naturalization that 1) he had never been charged with committing any crime or offense and 2) he had not given false or misleading information to any United States official while applying for any immigration benefit, when he stated on previous applications that he had never been charged with a violation of law and he had never been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance. (DE 1474; see also DE 670).[4] In support of its case, the government offered into evidence at trial documentation of petitioner's criminal history abroad[5] as well as the testimony of two individuals

---

[4] Regarding the second charge, the government introduced as evidence petitioner's previously-filed applications for refugee status and application for permanent resident status, where petitioner made similar representations about his criminal history as he made on his naturalization application. (See Immigration Trial, September 19, 2011 (DE 2144) at 20-22).

[5] The records at issue consist of the government's exhibits 20-28, 30-31, and 33-36, which are court documents and police reports from the former Yugoslavia, now called the Republic of Srpska, a political subdivision within Bosnia Herzegovina, petitioner's native country. These records, spanning from 1991 to 1996, include the following charges against petitioner and associated records: charge of "attempting to inflict severe bodily injury" occurring on September 24, 1991 (ex. 20); charge of "attempt[] to commit the criminal act of murder" occurring on March 15, 1993 (ex. 21); charge of "criminal act of murder" and "criminal act of endangering general safety" occurring on December 20, 1993 (ex. 22); charge of "criminal act of []murder" occurring on February 3, 1994 (ex. 23) and document reflecting arrest for this charge (ex. 33); charge of "criminal act against public safety of people and property" occurring on August 10, 1993 (ex. 24) and document reflecting petitioner admitting this conduct (ex. 36); charge of "criminal act against the general safety of people and property" occurring on May 17, 1994 (ex. 25); charge of "criminal act of violent behavior"

as to the origins and authenticity of the documents.[6]

Claims 1 to 6 allege that the court erred on several grounds in admitting at the immigration trial records of foreign convictions in absentia, foreign police records, and testimony relating to these records. Specifically:

• Claim 1 alleges that the court violated the due process and confrontation clauses by admitting the foreign conviction and police records;

• Claim 2 alleges that the court erred by admitting prejudicial inflammatory details of crimes from the foreign conviction and police records in violation of Fed. R. Evid. 403;

• Claim 3 alleges that the court erred by finding that the testimony of government witnesses was sufficient to establish the authenticity of various of the foreign records under Fed. R. Evid. 901(a);

• Claim 4 alleges that the court erred in not applying Fed. R. Evid. 901(b)(7) in finding various of the foreign records to be authentic;

• Claim 5 alleges that the court erred by "refusing to decide the prongs of 'reliability and trustworthiness' required by the federal shop book rule to authenticate court records and police reports"; and

• Claim 6 alleges that the court erred by admitting various of the foreign records in violation of Fed. R. Evid. 803.

(Mot. to Vacate (DE 2224) at 4-9; Mot. to Vacate (DE 2224-1) at 1-18; Mot. to Vacate (DE 2224-2) at 1-20).

---

occurring on April 22, 1995 (ex. 26); charge of larceny and taking and concealing cigarettes occurring on March 29-30, 1995 (ex. 27); and charge of "criminal act of robbery" occurring on May 14, 1996 (ex. 28). These records also include evidence of petitioner's arrest for attempted murder occurring on June 2, 1996 (ex. 31, ex. 30 at 2) and later in absentia judgment and sentencing of petitioner regarding the attempted murder in addition to two counts of extortion (ex. 30) as well as an increase to this sentence on appeal (ex. 34). (See also Immigration Trial, September 20, 2011 (DE 2144-1) at 114-15 (witness explaining increase to sentence on appeal); Immigration Trial, September 23, 2011 (DE 2144-4) at 6-21 (government's closing arguments summarizing above evidence)).

[6] The documentation of petitioner's criminal history abroad was presented primarily though the testimony of two individuals who testified as to the origins of the documents: Igor Rajic, an FBI legal attaché working abroad at the United States Embassy in Sarajevo, Boznia Herzegovina, (Immigration Trial, September 19, 2011 (DE 2144) at 78-109; Immigration Trial, September 20, 2011 (DE 2144-1) at 6-94), and Vlado Jovanic, the Director of Professional Standards for the Ministry of International Affairs of the Republic of Srpska, a political subdivision within Bosnia Herzegovina, (Immigration Trial, September 20, 2011 (DE 2144-1) at 94-136; Immigration Trial, September 21, 2011 (DE 2144-2) at 5-31).

The magistrate judge recommends dismissal of these claims as barred because "in petitioner's appeal to the Fourth Circuit, petitioner unsuccessfully challenged the court's admission of the foreign records as a proper exercise of the court's discretion." (M&R (DE 2261) at 7 (citing Subasic, 568 F. App'x at 235)). Additionally, the magistrate judge states the "Fourth Circuit's ruling establishes that claims 1 to 6 are also meritless," providing "an additional ground for their dismissal." (Id.).

Petitioner argues that most of the above claims could not have been responded to by the Fourth Circuit in that these claims were not raised on direct appeal by petitioner's counsel. (See Objs. to M&R (DE 2265) at 3 ("Response [by the Fourth Circuit] was given only on the issues of Fed. R. Evid. 403 and 901(a).") (emphasis in original)).

Petitioner is correct that the Fourth Circuit resolved issues regarding the admission of these records based on Rules 403 and 901(a).[7] See Subasic, 568 F. App'x at 235 ("We have thoroughly reviewed the record and conclude that the district court did not abuse its discretion in admitting the foreign records at Subasic's trial on the immigration charges.").

By so ruling, the Fourth Circuit found the documents in question sufficiently probative and properly authenticated, which clearly encompass petitioner's claim 2, based on Rule 403,[8] and claims 3 to 5, which argue that the court failed to properly authenticate the documents at issue. Petitioner's citation to United States v. Perlmuter, 693 F.2d 1290 (9th Cir. 1982) is inapposite. In

---

[7] Rule 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 901(a) provides that a document is authenticated only when supported by "evidence sufficient to support a finding that the matter in question is what its proponent claims."

[8] Petitioner argues at length as to the admission of "inflammatory hearsay of prejudice factual summary narrative of crime description on fabricated police reports to prove underlying crime charged." (See, e.g., Objs. to M&R (DE 2265) at 7). However, the Fourth Circuit found the evidence admitted sufficiently probative to outweigh prejudicial concerns, and, as the court discusses, these reports are not hearsay.

Perlmuter, the court reversed the district court for holding authentic and admissible an Israeli "rap sheet" purporting to list four of defendant's convictions where the trial court determined authenticity based solely on the documents' "aura of authenticity." Id. at 1292. Here, as stated above, the Fourth Circuit found the documents in question to be properly authenticated, documentation presented primarily through the testimony of Igor Rajic, an FBI legal attaché, and Vlado Jovanic, Director of Professional Standards for the Ministry of International Affairs of the Republic of Srpska.

Absent a change in the law, petitioner cannot relitigate a claim on collateral review that was decided on direct review. See United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004) ("Because the Defendants have not pointed to any change in the law that warrants our reconsideration of these claims, we agree with the district court that they cannot relitigate these issues."); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam).

Accordingly, petitioner's claims 2 to 5 are barred as having been previously litigated on direct review.

Additionally, as described below, petitioner's claims 1 and 6 fail because these records were not offered by the government for the truth of the matter asserted, therefore no hearsay concerns exist and the Confrontation Clause and Due Process Clause are not implicated.

First, "[h]earsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). A court may admit evidence, including statements made by someone other than the declarant if it is not offered for the truth of the matter asserted and is otherwise relevant. See, e.g., Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 173 n.18 (1988); see also United States v. Williams, 445 F.3d 724, 736 (4th Cir. 2006).

The records at issue and supporting testimony were introduced not to prove that petitioner

had previously committed a crime but to show that petitioner had lied on his naturalization form as to his criminal history. (See Immigration Trial, September 19, 2011 (DE 2144) at 38 ("One thing I just want you to keep in mind throughout this trial, this case is not about whether Mr. Subasic actually committed crimes . . ., the question is whether he was arrested at any point, whether he was charged or whether he was detained or served time in prison. The question ultimately is whether he lied about that.")). Thus, no hearsay concerns exist.

The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53–54(2004). For a statement to be excludable under the Confrontation Clause, it must be "testimonial," United States v. Udeozor, 515 F.3d 260, 268 (4th Cir. 2008), and offered for the truth of the matter asserted, Crawford, 541 U.S. at 59 n. 9 (the Confrontation Clause does not bar the use of "testimonial statements for purposes other than establishing the truth of the matter asserted"). Because the records at issue and supporting testimony were not offered for the truth of the matter asserted, the Confrontation Clause is not implicated.[9]

Finally, petitioner asserts that admittance of foreign convictions and police records violate the Due Process Clause. (See Mot. to Vacate (DE 2224-2) at 1-4). Petitioner is correct that "[t]he Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment together guarantee a defendant charged with a felony the right to be present at all critical stages of his trial." United States v. Rolle, 204 F.3d 133, 136 (4th Cir. 2000). But defendant's presence at

_____

[9] The Fourth Circuit, unlike other circuits, has not directly addressed whether a judgment of conviction is testimonial as defined by Crawford. See, e.g., United States v. Weiland, 420 F.3d 1062, 1077 (9th Cir.2005) ("it is undisputed that public records, such as judgments [of conviction], are not themselves testimonial in nature and that these records do not fall within the prohibition established by the Supreme Court in Crawford"). However, because the court finds that the records at issue and supporting testimony are not hearsay, it is unnecessary to address whether this evidence is also not testimonial.

his immigration and terrorism trials is not in dispute, and his presence at any preceding trial does not bear upon this litigation. See United States v. Nicaragua-Rodriguez, No. 98-4019, 1998 WL 738548 *1-2 (4th Cir. Oct. 22, 1998) ("Nicaragua-Rodriguez submitted a written application for naturalization as a United States citizen in August 1994 . . . . The Government was not required to prove that [she] was legally arrested or that the shooting she was arrested and indicted for was unjustified. The Government needed only to prove the fact that [she] knowingly concealed the arrest and indictment.").

Petitioner offers no binding precedent calling into question the above analysis. Petitioner does offer numerous examples of non-binding precedent, the most applicable of which is United States v. Causevic, 636 F.3d 998, 1002-04 (8th Cir. 2011). There, the Eight Circuit recognized that criminal judgments may be admitted to show that a defendant has a prior conviction without violating the Confrontation Clause. Id. at 1002. However, the court held that "the Bosnian judgment at issue here [rendered in absentia] was testimonial because the government used it as evidence that Mr. Causevic had lied when he said that he had not killed anyone," thus the judgment could not be admitted without violating the Confrontation Clause to show defendant made a materially false statement in an immigration matter about defendant's criminal conduct. Id. at 1004. Unlike here, the Bosnian judgment was offered for the truth of the matter asserted. See id. at 1008 (Shepherd, J., concurring) ("The Government offered the prior conviction as proof that Mr. Causevic actually committed the charged offense rather than merely as proof of his conviction. Thus, the factual narrative was also hearsay because it was offered for its truth.").[10]

---

[10] As further explained by appellant in that case, "[t]he government had the burden to prove that the defendant made a false statement under oath when he allegedly denied that he had killed anyone during his interview with immigration agents regarding his application for adjustment of status. To support its case in chief, the government used the Bosnian documents set forth in the addendum which purport to show a conviction, in absentia, against the defendant from 2001 for the charge of murder, to show that the defendant had killed an individual when he was on the front lines serving with a Bosnian warlord's army during the war in Bosnian in 1995." Brief for Appellant at 13, United States v.

Here, petitioner's prior convictions were not offered to prove petitioner had committed crimes, but that petitioner had lied on his immigration forms as to his criminal history, and thus this evidence is not hearsay and does not implicate the Confrontation Clause or the Due Process Clause.

In sum, petitioner's claims 1 to 6 fail for not raising inapplicable challenges to the admission of the records at issue and as already having been decided on direct review by the Fourth Circuit. Additionally, the court's analysis as well as the Fourth Circuit's holding establishes that petitioners claims 1 to 6 are without merit.[11]

2.      Claims 7 to 17 and 19 to 25 are barred, and claims 7 to 25 are without merit.

Claims 7 to 17 and 19 to 25 are procedurally barred because petitioner failed to raise them in his appeal. A defendant who brings a direct appeal cannot raise in a collateral proceeding issues that he could have, but did not, raise in the appeal unless he can show cause and prejudice, or actual innocence. United States v. Pettiford, 612 F.3d 270, 280 (2004).[12] Additionally, petitioner claims 7 to 25 are without merit. The court will address the merits of each claim in turn below.

a.      Claim 7

In claim 7, petitioner contends that the court erred in imposing a terrorism enhancement, pursuant to U.S.S.G. § 3Al.4(a), in sentencing petitioner for his convictions on the immigration counts. (Mot. to Vacate (DE 2224-1) at 19-20). The magistrate judge recommended this claim fails

---

Causevic, 636 F.3d 998, 1002-04 (8th Cir. 2011), 2010 WL 805846 (C.A.8), at *13.

   [11] Petitioner asserts to this court, in his objections to the M&R, the same argument he made to the magistrate judge, that the government "never timely, properly responded to [petitioner's] claims 1, 2, 4, 5, 8," arguing that because the government failed to do so, pursuant to Federal Rule of Civil Procedure 8(b)(6), the government has admitted these claims. (Objs. to M&R (DE 2265) at 37). Even though petitioner does not like the way in which the government grouped his claims, the court finds that the government adequately responded to all claims.

   [12] Petitioner appears to argue, as he previously argued in his original § 2255 motion, that ineffective assistance of appellate counsel constitutes cause for his not having raised these claims in his appeal and that he was prejudiced by his appellate counsel's actions, or lack thereof. (See Objs. to M&R (DE 2265) at 12-13). However, as explained below, petitioner has failed to show that counsel's performance was deficient or that he was prejudiced by his counsel's performance. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

because the court did not impose a terrorism enhancement as to these convictions, noting that the court did impose the terrorism enhancement in sentencing petitioner on the terrorism convictions. (M&R (DE 2261) at 8 (citing Presentence Investigation Report ("PSR") (DE 2089) ¶ 69)).

Although somewhat unclear, petitioner apparently concedes that the terrorism enhancement was applied on the terrorism convictions but argues that he unfairly received the statutory maximum sentence on the immigration counts outside of the guidelines. (Objs. to M&R (DE 2265) at 13). First, this claim fails because a challenge to the advisory guideline range may not be brought in a § 2255 proceeding. See United States v. Newbold, 791F.3d455, 459 (4th Cir. 2015) (citing United States v. Foote, 784 F.3d 931, 932-33, 940-43 (4th Cir. 2015)). Additionally, petitioner did not receive a sentence outside of the guidelines. The statutory maximum term of imprisonment for each of count 12 and count 13 is 10 years, and the guidelines provided for life imprisonment but was reduced to 120 months in view of the maximum allowed by statute. (PSR (DE 2089) ¶¶ 93-94). Petitioner received 120 months on each of count 12 and count 13, as provided by statute.

Petitioner's claim 7 is without merit.

b.      Claim 8

In claim 8, petitioner contends that the special administrative measures ("SAMs"), pursuant to 28 C.F.R. § 501.3, that applied to his incarceration violated his rights to due process, to a fair trial, to have compulsory process to secure the attendance of witnesses favorable to him, to prepare and present an impartial defense, to retain an attorney of his choice, to impartially exercise his pro se rights, and to obtain access to the courts with respect to both of his trials. (Mot. to Vacate (DE 2224-1) at 21-25; Mot. to Vacate (DE 2224-2) at 21-27).

As pointed out by the magistrate judge, the record plainly discredits this claim. (See M&R (DE 2261) at 8-9). The record for both trials shows petitioner's ability to file numerous, expansive

motions and other documents on his behalf (including two motions to suppress (DE 816, DE 1179));

his active participation in pretrial and trial in-court proceedings; efforts made by the court to ensure

SAMs did not unduly interfere with petitioner's trial preparation (see, e.g. , DE 1531 at 1-6; DE

1571 at 6); and the availability to him of stand-by counsel to handle matters he himself was unable

to handle.[13]

Petitioner provides no specific objection to the magistrate judge's assertions above, and only

argues that the government in their motion to dismiss tried to discredit this claim solely by noting

petitioner's ability to "file motions and documents."  (Objs. to M&R (DE 2265) at 14).

For the reasons stated by the magistrate judge, petitioner's claim 8 is without merit.

      c.    Claim 9

In claim 9, petitioner asserts that the court erred in not questioning prospective jurors during

voir dire about religious and national prejudice in his terrorism trial.  (Mot. to Vacate (DE 2224-1)

at 26-28).  The magistrate judge recommends this claim fails because petitioner has not alleged facts

showing that any actually prejudiced jurors were seated or that any prejudice played any role in his

conviction.  (M&R (DE 2261) at 9).

Petitioner objects to that determination, arguing that he was not allowed during voir dire to

ask about religious and national prejudice, he is now unable to allege facts showing prejudiced jurors

---

[13] Regarding petitioner's argument that under the procedures of the court, petitioner was unable to secure an attorney of his choice, though the Sixth Amendment guarantees a defendant's right to his or her counsel of choice, Powell v. Alabama, 287 U.S. 45, 53 (1932), such a right is "circumscribed in several important respects," Wheat v. United States, 486 U.S. 153, 159 (1988).  First, the "defendant's right to choose his or her lawyer is not absolute" as it "must not obstruct orderly judicial procedure and deprive courts of the exercise of their inherent power to control the administration of justice."  United States v. Mullen, 32 F.3d 891, 895 (4th Cir. 1994) (citations omitted). This is particularly so for indigent defendants: "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  United States v. Gonzalez–Lopez, 548 U.S. 140, 151 (2006) (citations omitted); see also United States v. Smith, 640 F.3d 580, 588 (4th Cir. 2011).  The court additionally notes that petitioner was appointed multiple different counsel, one in response to petitioner so moving.  See DE 568 (petitioner's motion to appoint new counsel); DE 631 (order granting DE 568).

were seated or that prejudice played a role in his conviction.  (Objs. to M&R (DE 2265) at 14-15 (citing <u>Rosales-Lopez v. United States</u>, 451 U.S. 182, 190 (1981)).

However, review of the voir dire proceedings for the terrorism trial  show that the court asked potential jurors the following: "If the evidence displays that the defendant or others allegedly involved in the crimes at issue are Muslim, are there any among you who would say that this fact alone causes you to assume that the defendant is guilty or not guilty," and that multiple jurors were dismissed who indicated possible bias towards the Muslim community.  (Terrorism Trial, May 8, 2012 (DE 2147) at 80-81, 143-45, 250-51).  Review of the voir dire proceedings additionally reveal that jurors were asked about their experiences in other countries, and the court took every effort to accommodate petitioner's requests regarding questioning of potential jurors as to whether their experiences in other countries had created any bias.  (See <u>id.</u> at 258-59).[14]

The court recognizes that petitioner submitted to the court over 100 pages of hand-written questions to be asked to the jury at the terrorism trial, (<u>see</u> DE 1234; DE 1936), the vast majority of which were not asked, (<u>see</u> Terrorism Trial, May 8, 2012 (DE 2147)).  However, the court was not obligated to ask each of petitioner's proposed questions.  See <u>United States v. Brown</u>, 767 F.2d 1078, 1083 (4th Cir. 1985) (citations omitted) (a trial court "need not ask every single question on [the] subject which the ingenuity of counsel can devise.  A general query whether any juror is unable to judge the case fairly because of race, creed or color of the defendant should suffice.").

_____

[14]  During the immigration trial, the court rejected asking the following voir dire question posed by petitioner as being "loaded": "Do you think that criminals, racists who prosecute people, are ethic or religious grounds have [the] right to legally be in charge of any position in law or government?" (Immigration Trial, Jury Selection, September 19, 2011 (DE 2143) at 34; petitioner's proposed voir dire (DE 1417) at 2-3).  However, the court did ask prospective jurors if they had traveled to "Yugoslavia or the existing nation of Bosnia Herzegovina," if they had formed "any opinions or beliefs, positive or negative, about the ethnic nationalities of the country of Bosnia Herzegovina"  and asked more generally if any have 'beliefs, religious based or otherwise, in which you believe it is improper for you to hear the evidence in this case, decide the facts and apply those facts as you find them to the law as I tell you it is."  (Immigration Trial, Jury Selection, September 19, 2011 (DE 2143) at 30-32).

Petitioner's claim 9 fails in petitioner has not alleged facts showing that any actually prejudiced jurors were seated, that prejudice played any role in his conviction, or that the court did in fact reject petitioner's request to inquire during voir dire as to prejudice.

        d.     Claim 10

In claim 10, petitioner alleges that the court erred as to two of the jury instructions given at his terrorism trial and in refusing his request for contrary instructions. (Mot. to Vacate (DE 2224-1) at 29-32). The two instructions at issue given by the court were that the First Amendment was not a defense to the crimes charged against petitioner and that the jury was not to judge the law, but only the facts. (Id.).

As correctly stated by the magistrate judge, petitioner's challenge to the instruction regarding the First Amendment fails because, among other reasons, the Fourth Circuit affirmed the same instruction in its decision affirming the convictions of petitioner's co-defendants who proceeded to trial. Hassan, 742 F.3d at 128. Likewise, the challenge to the instruction about the jury's role fails because it accurately states well-established law. See, e.g., United States v. Gaudin, 515 U.S . 506, 513 (1995) (citing Sparf v. United States, 156 U.S. 51, 105-06 (1895) ("[T]he judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions.")).

Petitioner raises no specific objections to the magistrate judge's recommendations but simply reiterates his disagreement with the jury instructions telling the jury that they were not allowed to consider the First Amendment and that they were not allowed to determine the law. (Objs. to M&R (DE 2265) at 16-18). Notwithstanding petitioner's citations to historic Supreme Court opinions, the magistrate judge is correct that the law currently is well settled that it is the judge that instructs the jury as to the proper law. See Gaudin, 515 U.S. at 513. Additionally, the jury was correctly instructed that they could not consider the First Amendment as a defense in the context of this case.

Although petitioner argues that the First Amendment issue he is raising is different than that raised by his co-defendants and decided by the Fourth Circuit, in both cases petitioners urged the court to allow freedom of speech under the First Amendment to be used to rebut the same charges against them. In petitioner's co-defendants' trial the court instructed the jury thus:

> I turn your attention now to the First Amendment to the United States Constitution, which establishes certain rights which accrue to each defendant. The First Amendment provides, in part, that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof or abridging the freedom of speech or of the press or the right of the people to be peaceably assembled. The right of freedom of speech and to engage in peaceful assembly extends to one's religion and one's politics. Having instructed you concerning rights of each defendant pursuant to the First Amendment, I also instruct you that the First Amendment is not a defense to the crimes charged in the indictment.

Hassan, 742 F.3d at 128. The instructions provided are verbatim the same as provided in petitioner's case, (see Jury Instr. (DE 2059) at 30), and affirmed by the Fourth Circuit. Hassan, 742 F.3d at 128. Thus, petitioner's claim 10 fails.

e.     Claims 11 and 12

In claim 11, petitioner alleges that the court erred in admitting and permitting the playing of various audio recordings in his terrorism trial. (Mot. to Vacate (DE 2224-1) 33-34; Mot. to Vacate (DE 2224-2) at 28-29). In claim 12, petitioner alleges that at the same trial the court erred in sending to the jury audio recordings that had not been played during the presentation of the evidence. (Mot. to Vacate (DE 2224-1) at 35-36).

The magistrate judge recommends that these claims fail because petitioner has failed to show that the court abused its discretion in handling this evidence. (M&R (DE 2261) at 10 (citing Hassan, 742 F.3d at 130 ("We assess challenges to a trial court's evidentiary rulings for abuse of discretion. In reviewing an evidentiary ruling under that standard, we will only overturn [a] ruling that is arbitrary and irrational.")).

Petitioner disagrees, arguing that the audio recordings made by the government pursuant to the Foreign Intelligence Surveillance Act ("FISA recordings") were improperly sent to the jury room, including portions that were not played during open court, and were used to prove his role in the conspiracy but were altered and truncated by the government. (Objs. to M&R (DE 2265) at 18-20).[15]

First, although petitioner asserts significant amounts of audio recordings not previously presented in court were sent to the jury room, a review of the record shows this did not occur. (See DE 2052 (instructing jury they could listen to audio recordings they previously heard during trial if they so request and to do so they would listen in the courtroom)). Petitioner's citation to United States v. Noushfar, 78 F.3d 1442, 1444 (9th Cir. 1996), amended, 140 F.3d 1244 (9th Cir. 1998) is inapposite. See id. (holding reversable error where court "allowed the jury to take to the jury room fourteen tapes that had not been played in the courtroom . . . [without] instructions.").[16]

Petitioner's has made his second argument, that the FISA recordings were tampered with or incomplete and therefore, for this reason and others, should have been excluded, many times to

---

[15] Petitioner also argues the audio was not properly authenticated. The audio at issue was properly authenticated by the government witness, co-defendant Boyd, who was the person recorded speaking with petitioner. (See, e.g., Terrorism Trial, May 21, 2012 (DE 2157) at 70-71); see also United States v. Wilson, 115 F.3d 1185, 1189 (4th Cir. 1997) ("A tape recording can be authenticated if the proponent satisfies Federal Rule of Evidence 901(b)(5), which provides that the 'identification of a voice, whether heard firsthand or through mechanical . . . recording' is admissible 'by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.' The district court has wide latitude in determining whether or not the proponent of a tape recording has adequately laid the foundation from which the jury could reasonably evaluate the accuracy, the validity, and the credibility of the contents of the recordings.").

[16] The court did make available to the jury transcripts, as prepared by the government, and counter transcripts, as prepared by petitioner, of audio recordings presented at trial, transcripts that were "not the evidence, but tools to aid you in following the content of the conversations as you listen to the recordings." (Jury Instr. (DE 2059) at 9-10). These transcripts and counter transcripts may have included more dialogue than that which was provided at trial. (See id. at 9 ("The basis of your understanding of words spoke in another language is informed by your assessment of expert testimony, and in some instances that testimony may have been limited in reference to a particular transcript, sufficient to authenticate it but, due to the press of time or some other reason, that testimony did not include the entire content of the recording, as translated . . . . These are to be made available to you in the jury room together with all the evidence.")). Petitioner has failed to show that the court abused its discretion in handling this evidence, providing the jury with both transcripts and petitioner's counter transcripts and reminding the jury to consider both. (See id. at 10).

which the court has responded.  (See, e.g., DE 937 (denying in part petitioner's second motion to compel recorded statements); DE 1153 (denying motion in limine to exclude any and all FISA evidence); DE 1266 (denying petitioner's motion "to file motion regarding cut-out and missing words from certain recordings"), DE 1354 (denying motion to compel FISA recordings); DE 1174 (denying petitioner's motion to suppress FISA derived evidence); DE 1933 (motion to review government audio recordings taken under advisement by oral order on May 7, 2012); Terrorism Trial, May 9, 2012 (DE 2148) at 212 (addressing during ex parte conference during trial petitioner's objections to the "weakness of audio evidence"); see also DE 930 at 7-8 (order explaining pursuant to the Classified Information Procedures Act ("CIPA"), how the "court undertook review of the classified discovery that the government sought to delete pursuant to CIPA § 4," holding that "[t]he court is confident in the minimization procedures employed by the government" and that "under the statutory framework the government was entitled to delete certain items from discovery"); DE 989 (holding in abeyance petitioner's "motion for access to classified material")).[17]

The court thoroughly considered petitioner's arguments regarding the audio recordings and did not abuse its discretion in the handling of this evidence.  Accordingly, petitioner's claims 11 and 12 fail.

   f.  Claim 13

In claim 13, petitioner contends that the court erred in permitting the government to use in the terrorism trial the convictions on the immigration counts because the convictions were

---

[17] The government's response in briefings and at trial to petitioner's arguments can be summarized thus: "the government notes that it explained to Subasic that equipment limitations and limitations of the setting in which the first recording was made are the reasons the recording appears to pick up in the middle of a conversation and does not have the usual recorded indicia of time, date, and place.  Notably, the government confirmed that there was no further recordings to produce."  (DE 937 at 3; see also Terrorism Trial, May 9, 2012 (DE 2148) at 207-08 ("I really don't know what else the government can say. We've had motions upon motions.  The government has made multiple attempts, as the Court is aware, to secure the ability to even produce what was irrelevant information in order to simply satisfy Mr. Subasic's concerns . . . .  The government has provided everything in its possession")).

unconstitutional. (Mot. to Vacate (DE 2224-1) at 37-39.) The government used the convictions to attack his credibility. (See Terrorism Trial, June 12, 2012 (DE 2176) at 79-80).

The magistrate judge correctly determined this claim fails because petitioner has failed to show the convictions on the immigration counts were unconstitutional and has failed to show permitting the government's use of the convictions otherwise violated Fed. R. Evid. 609(a)(l)(B), which provides that evidence of a felony conviction of a defendant to attack his character for truthfulness "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." (M&R (DE 2261) at 10).

Petitioner provides no specific objections, arguing only that "when this court rules" that the immigration count convictions were unconstitutional, then petitioner can assert this claim. (Objs. to M&R (DE 2265) at 21-22). The court has not ruled thus, and petitioner's claim 13 fails.

g.     Claim 14

In claim 14, petitioner contends that the court erred in not suppressing at his terrorism trial all evidence obtained by order of the Foreign Intelligence Surveillance Court because the surveillance order it issued for such evidence was not supported by probable cause, but instead was based on false and misleading information, in violation of the Fourth Amendment. (Mot. to Vacate (DE 2224-1) at 40-41).

The magistrate judge found that this claim fails because on February 15, 2011, petitioner filed a motion (DE 816) for this same relief, which the court denied by order entered on June 22, 2011 (DE 1174). (See M&R (DE 2261) at 10-11 (citing United States v. Johnson, 457 U.S. 537, 562 n.20 (1982) (A defendant may not assert in a § 2255 proceeding a Fourth Amendment claim when he has had, as here, "an opportunity for full and fair litigation of his claim." ))).

Petitioner argues that the magistrate judge misconstrued his claim and that his argument is

that because "under FISA-CIPA procedure," petitioner had no access to the government's surveillance application and therefore petitioner was unable to challenge probable cause, thereby rendering evidence collected pursuant to the surveillance application in violation of the Constitution. (Objs. to M&R (DE 2265) at 23).

In petitioner's previously filed motion to suppress, petitioner argued, as he does here, that he "does not yet have access to the affidavits and other papers which the Government may have submitted to the Foreign Intelligence Surveillance Court (the "FISC") to support an order by the FISC authorizing the electronic surveillance and/or physical searches." (DE 816 at 3).

In denying petitioner's motion, the court addressed this argument, detailing the procedures for obtaining orders authorizing electronic surveillance or physical searches under FISA, including certification and minimization requirements, (DE 1174 at 4-9) and the procedures for challenging the use of evidence collected pursuant to a FISA order in a criminal prosecution, (id. at 9-10). The court engaged in an analysis concerning defendants' constitutional challenges to FISA, including Fourth Amendment claims, ultimately finding FISA to be constitutional. (Id. at 10-14); see also United States v. Elshinawy, No. CR ELH-16-0009, 2017 WL 1048210, at *8 (D. Md. Mar. 20, 2017) (collecting cases) ("the legality of FISA's in camera, ex parte review provisions has been upheld by virtually every federal court that has considered the matter").

The court found, in response to petitioner's challenges to the government's evidence,[18] that consistent with the relevant law, "the court's duty to perform an ex parte, in camera review is triggered, and the court has carefully engaged in such a review," a review that "compel[led] the conclusion that defendants' motions to suppress FISA-derived evidence and to disclose FISA

---

[18] These challenges were brought by both petitioner and his co-defendants in separate motions, the substance of which the court found to be substantively similar, which the court addressed in this omnibus order. (DE 1174 at 1 n.1).

applications and orders must be denied," (id. at 10, 15).  In so holding, the court stated:

> The court carefully reviewed the dockets, keeping in mind the concerns defendants have raised with regard to the ex parte, in camera nature of the proceedings and the findings of probable cause. The court gave particular attention to issues of probable cause and the facts alleged in the applications before examining the orders themselves. The court is satisfied that probable cause existed that the targets of surveillance or physical searches were foreign powers or agents of a foreign power, that this finding was not based solely on the basis of activities protected by the First Amendment, and that the facilities to be surveilled and property to be searched were owned, used, possessed by, or were in transit to or from an agent of a foreign power.

(Id. at 15-16).

Although petitioner's continues to assert that the evidence collected is in violation of the Constitution, petitioner had the opportunity to litigate this claim and the court addressed this claim fully.  See Stone v. Powell, 428 U.S. 465, 494 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."); Johnson, 457 U.S. at 562 n.20 (recognizing Stone's applicability to § 2255 cases); Sneed v. Smith, 670 F.2d 1348, 1355 (4th Cir. 1982) (citation omitted) ("To have his fourth amendment claim considered in the district court, Sneed, of course, had to overcome the barrier of [Stone], by showing that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired.").

Because petitioner had an opportunity for a full and fair litigation of his claim, petitioner's claim 14 fails.

h.      Claim 15

In claim 15, petitioner contends that the court erred at his terrorism trial by permitting the jury to see his shackles.  (Mot. to Vacate (DE 2224-1) at 42-44; Mot. to Vacate (DE 2224-2) at 30).  The magistrate judge noted petitioner's failure to show that the court erred in its handling of the

visibility of petitioner's shackles, that the court dispensed with shackling when it deemed appropriate, and the court's bases for requiring shackling, including petitioner's extensive and violent criminal record, his qualification for SAMs, and his periodic intense demeanor. (M&R (DE 2261) at 11 (citing Terrorism Trial, May 21, 2012 (DE 2157) at 18-19; Terrorism Trial, May 22, 2012 (DE 2175) at 8-9)).

Petitioner makes no specific objection to the magistrate judge's recommendation, but cites to United States v. Banegas, 600 F.3d 342, 346–47 (5th Cir. 2010) for the proposition that it is the government's burden to prove beyond a reasonable doubt that the jury did not see the restraints. Banegas did not so hold. See id. at 346 (holding, first, if the district court adequately articulated specific reasons for shackling, the decision is reviewed for abuse of discretion, and, second, if the district court did not, the government must show on appeal beyond a reasonable doubt that the error of unjustified shacking did not contribute to the jury verdict); see also United States v. Williams, 629 F. App'x 547, 552-53 (4th Cir. 2015) ("The district court had a shackling recommendation from the U.S. Marshals Service, a recommendation based on, among other things, Williams's extensive criminal record and the seriousness of the current charges. Further, the district court . . . took reasonable measures to minimize the impact of the shackles and stun device.").

Here, the court ordered petitioner shackled with adequate justification, as supported by the record, and took reasonable measures to minimize the impact of the shackles. Accordingly, petitioner's claim 15 is without merit.

i.     Claim 16

In claim 16, petitioner contends that the court erred in denying his motion to suppress "all-any evidences obtained with I.C.E. search warrant which also tainted second F.B.I. search warrant of Subasic[']s residence in Holly Springs, NC, all in violation of Article IV." (Mot. to

Vacate (DE 2224-1) at 45-47).[19]  The magistrate judge turned to petitioner's June 23, 2011 "motion to suppress any and all evidence seized with two search warrants issued to ICE on September 23, 2009 and FBI on September 25, 2009" (DE 1179), which was denied by order entered September 12, 2011, (DE 1419), which adopted a memorandum and recommendation on that motion, (DE 1307).

Here, again, the magistrate judge correctly found that petitioner had "an opportunity for full and fair litigation of his claims, and thus his claims are not cognizable on § 2255 review."  (M&R (DE 2261) at 11-12 (citing Johnson)).

Petitioner offers no specific objections to the magistrate judge's recommendation.  For the reasons above stated, petitioner claim 16 fails.

> j.    Claim 17

In claim 17, petitioner alleges that in both his trials the court erred in ordering stand-by counsel to prepare copies of exhibits for submission to the clerk and thereby ultimately the jury without allowing petitioner to inspect them.  (Mot. to Vacate (DE 2224-1) at 48-51; Mot. To Vacate (DE 2224-2) at 30).  As a result, many exhibits submitted were purportedly mislabeled, did not comprise the material intended, and, in the case of audio and video discs, had defects in the recording, such as scrambled noise.   (Mot. to Vacate (DE 2224-1 at 48-51).

The magistrate judge recommends rejecting petitioner's claim 17 as "unduly conclusory," in that petitioner does not "identify the specific exhibits about which he is complaining or thereby the specific deficiencies associated with any particular exhibit," noting that although "petitioner seeks to justify the lack of specificity on the grounds that prison officials have not made various

---

[19]    Throughout petitioner's filings, petitioner refers to "Article IV" and the "Fourth Amendment" interchangeably.  It appears undisputed that petitioner is solely referencing the Fourth Amendment to the Constitution and not Article IV of the Constitution.

records available to him, these allegations are also unduly conclusory, failing to show, among other things, that he has exhausted the remedies available to him to obtain the allegedly withheld materials."  (M&R (DE 2261) at 12).

Petitioner objects in that the root of his claim is that he was not allowed to "inspect final samples of defense exhibits submitted to the court" in both trials, thus "destroy[ing] all [of] my defense in front of the jury," alleging that his stand-by counsel "purposely mislabeled half of [the] evidence[]."  (Objs. to M&R (DE 2265) at 26).  Petitioner also asserts he is unable to provide specific exhibits to illustrate deficiencies because the exhibits are in the court's possession, and petitioner is not allowed to see them.  (Id.).

The magistrate judge is correct that petitioner's allegations are unduly conclusory.  Petitioner offers no specific exhibit as an example, no specific moment in trial where his defense was impacted, and no evidence that his stand-by counsel purposefully mislabeled evidence.[20]

The court is additionally aware that petitioner argued multiple times, during his terrorism trial, that exhibits relating to the audio recordings presented to the jury had been misnumbered thus creating confusion for the jury, arguments which, at least in part, appear to be the same arguments petitioner now asserts.  (See, e.g., Terrorism Trial, May 30, 2012 (DE 2163) at 158-61; Terrorism Trial, May 31, 2012 (DE 2164) at 281-284).  However, a review of the record plainly belies this claim, in that the court was made aware of the difficulty with exhibit pagination and the court

---

[20] Prior to trial petitioner made similar arguments to the court in his "motion to order [standby counsel] to immediately provide to Subasic material for trial," (DE 1911), which the court struck from the record, holding:

> The basis of the motion appears to be defendant's frustration with information technology ("IT") capabilities and functioning . . . .  Defendant has been reminded of the burdens and difficulties of self-representation, and has vehemently communicated his desire to conduct his own defense in spite of the same. His frustration as expressed in the instant filing appears to be a consequence of difficulties with his foreseeable limitations. While defendant captions the filing as a motion, the court finds no issue in the filing susceptible to judicial decision-making, and the Clerk is DIRECTED to strike it from the record.

(DE 1917 at 2).

provided the opportunity for the jury to review the correct pages from exhibits as identified by

petitioner.

The court summed the difficulty and resolution thus:

THE COURT: With all of the audio that the government's played . . . , Mr. Subasic worked very hard to review the government's transcripts and determine if they were correct or not. And in a number of places he determined they were not correct. Either a speaker was misidentified, words were inserted that he believes were said, and words that were said were omitted in places. And he identified what page numbers should be read of his counter-transcripts. And each juror has two large volumes of material underneath their chair. And when the government finishes playing the audio, I turn to the jury, as Mr. Subasic has wished, and I say to the jury, "Open your book at tab 377," for example, and "and read pages 2, 7 and 9." . . . . And with the last witness, Dylan Boyd, about the second or third to the last audio clip, [petitioner] alerted me at that point in this trial that you felt like all of the pages that you wanted the jury to read weren't read. So, I know there's this problem in converting transcripts and that sort of thing, so I told you to go – got back to the cell and look through this and tell the Court what pages weren't read. And you told me yesterday you stayed up till 4 in the morning and created this document . . . .

DEFENDANT SUBASIC: I could state it for the record. There is no – every – we believe that 70% of the transcripts have been accurately presented to the jury . . . .

THE COURT: Well, what I'm going to do is give you the chance at that point to let the jury read some things that you believe that are important that weren't read earlier."

(Terrorism Trial, June 1, 2012 (DE 2166) at 7-9).

The pages that petitioner identified as the jury not having read were submitted to the court

and are found at DE 2006. Thereafter, as stated above, the court made time for the jury to review

the pages identified by petitioner on multiple days during the terrorism trial. (See Terrorism Trial,

June 6, 2012 (DE 2170); Terrorism Trial, June 7, 2012 (DE 2172); Terrorism Trial, June 12, 2012

(DE 2176); see also Terrorism Trial, June 6, 2012 (DE 2170) at 216-217 ("Okay, Mr. Subasic, I

stopped, as you know, if you were listening, with transcript 358. And that would leave transcripts

362, 366, 367, 368, 369, 374, 376, 377, 378, 379, 380, 382, 383, 386, 388, 389, and 391. Now, I've

become alerted to the fact that, certainly, there were some pagination issues . . . But there also seems to have been opportunity provided to you, in reviewing this, to suggest additional counter-transcripts or other pages that don't reveal themselves as being a pagination issue, but rather some new thinking . . . . So, I think it's a pretty liberal concession, not opposed by the government, that you have a further opportunity to reflect on your counter-transcripts. ")).

Petitioner's claim 17 is without merit.

k.      Claim 18

Petitioner alleges ineffective assistance of stand-by counsel in violation of the Sixth Amendment at both his trials, based on the purported mishandling of exhibits as referenced in his claim 17.  (Mot. to Vacate (DE 2224-1) at 52.)  The magistrate judge recommends dismissing this claim in that there is no constitutional right to stand-by counsel, quoting in part the following passage from an unpublished district court case in this circuit:

> Although the United States Court of Appeals for the Fourth Circuit has not decided the specific matter, it is recommended, in light of the decision of the Court of Appeals in [United States v. Beckton, 740 F.3d 303, 307 (4th Cir. 2014)] (a direct appeal holding that there is no right to hybrid representation), that the District Court follow the reasoning of the United States Courts of Appeals for the Second and Seventh Circuits and hold that, since there is no right to hybrid representation, a claim for ineffectiveness of stand-by counsel does not arise where the criminal defendant, of his or her own choice, is proceeding pro se in a criminal trial, including the penalty phase.  See, e.g., [United States v. Morrison, 153 F.3d 34, 55 (2d Cir.1997); United States v. Schmidt, 105 F.3d 82, 90 (2d Cir.1997); United States v. Windsor, 981 F.2d 943, 947 (7th Cir.1992)].

(M&R (DE 2261) at 12-13 (citing Alkebulanyahh v. Byars, CIA No. 6:13-cv-00918-TLW-KFM, , at *22 (D.S.C. 5 Nov. 2014)).

Petitioner objects that the magistrate judge has stated the law incorrectly and that "once a lawyer is appointed in an advisory capacity, that lawyer is obligated to provide the defendant with adequate assistance consistent with the defendant's wishes."  (Objs. to M&R (DE 2265) at 27-28.)

The Fourth Circuit recently has reiterated that petitioner has no right to stand-by counsel, suggesting possibly petitioner has no right to effective stand-by counsel, see United States v. Cohen, – F. 3d –, 2018 WL 1936355, at *9 (4th Cir. 2018); but see United States v. Mack, 455 F. App'x 323, 325–26 (4th Cir. 2011) (analyzing ineffective assistance of counsel claim of stand-by counsel). Because the Fourth Circuit has not addressed this specific issue, in an abundance of caution the court will address this claim; however, the court finds this claim fails.

In order to establish ineffective assistance of counsel, a petitioner must satisfy a two-pronged test. See Strickland, 466 U.S. at 687. Under the first prong, a petitioner must show that his counsel's representation "fell below an objective standard of reasonableness." Id. at 688. The court must be "highly deferential" to counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. The second prong requires a petitioner to show that he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Besides unsubstantiated allegations that stand-by counsel "purposely mislabeled half of [the] evidence[]," (Objs. to M&R (DE 2265) at 26), petitioner asserts nothing in support of his claim that stand-by counsel assistance "fell below an objective standard of reasonableness," nor does petitioner offer the court any indication of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694. Indeed, as pointed out by the court, it appears through the labors of petitioner and stand-by counsel that many of the difficulties regarding the mislabeling of evidence were rectified in the course of the trial proceedings. (See DE 2006; Terrorism Trial, June 6, 2012 (DE 2170); Terrorism Trial, June

7, 2012 (DE 2172); Terrorism Trial, June 12, 2012 (DE 2176)).

l.      Claim 19

In claim 19, petitioner contends that at the terrorism trial the court erred in permitting the introduction of evidence concerning conspiracies in which other defendants, but not he, participated. (Mot. to Vacate (DE 2224-1) at 53-55). The magistrate judge noted that petitioner has not shown that the evidence was such as to rule out his participation in the allegedly unrelated conspiracies, and as stated by the court in denying petitioner's Rule 29 motion, the issue of petitioner's participation was an issue for the jury. (Objs. to M&R (DE 2265) at 13 (citing Terrorism Trial, June 12, 2012 (DE 2176) at 160-61 ("This case will go to the jury, and the jury will hear my instructions which, among other things, will explain that just because Mr. Subasic associated with somebody doesn't mean he's guilty."))).

Petitioner does not specifically object to the magistrate judge's conclusions but essentially reiterates his original argument that evidence at trial showed he had no knowledge of other conspiracies and unrelated and prejudicial evidence was presented to the jury concerning his co-conspirators. (See Objs. to M&R (DE 2265) at 28-29). The court finds petitioner's objections without merit, and claim 19 fails.

m.      Claim 20

Related to claim 19, in claim 20, petitioner contends that the court erred in the terrorism trial in not giving the jury an instruction on multiple conspiracies, which purportedly prevented the jury from properly understanding the law and from not attributing to petitioner evidence about conspiracies in which he did not participate. (Mot. to Vacate (DE 2224-1) at 56-57).

The magistrate judge noted that while the court did not give an instruction essentially binding it to find that petitioner did not participate in the supposedly unrelated conspiracies, it did instruct

the jury that "[w]hether the evidence proves a single conspiracy, or two or more 'multiple conspiracies' is question of fact you must decide." (Objs. to M&R (DE 2265) at 13 citing (Jury Instr. (DE 2059) at 31)). The magistrate judge recommends this claim fails in that 1) petitioner has not shown that the evidence was such as to render the instruction erroneous, and 2) petitioner discussed his defense based on unrelated conspiracies in his closing argument to the jury. (Id. (citing Terrorism Trial, June 13, 2012 (DE 2177) 10-11)).

Petitioner argues his objection has been misconstrued and that the "district court never instruct[ed] the jury on multiple conspiracy and to separate such conspiracies and evidence of such conspiracies if (as was) introduced . . . .". (Objs. to M&R (DE 2265) at 29-30).

As stated by the magistrate judge, the court instructed the jury as to multiple conspiracies. (See also Jury Instr. (DE 2059) at 31 ("In summary, you should consider all relevant evidence including any evidence of common actors, goals, objectives, time periods, places, or territories and decide whether it proves a single conspiracy, multiple conspiracies, or no conspiracy at all")).

Petitioner's claim 20 fails.

        n.      Claim 21

In claim 21, petitioner contends that the court erred in the terrorism trial by denying his Rule 29 motion at the close of all the evidence. (Mot. to Vacate (DE 2224-1) at 58-62). As the magistrate judge correctly concluded, this claim fails because petitioner has not shown that the court erred in denying the motion and sending the case to the jury. (M&R (DE 2261) at 13-14 (citing Terrorism Trial, June 12, 2012 (DE 2176) at 160-61 ("[I]n that light most favorable to the government, I cannot conclude that a reasonably minded jury must have a reasonable doubt as to the existence of the essential elements of the crimes charged in Count 1 and Count 2."))).

Petitioner provides no specific objections to the magistrate judge's conclusion, and the court

determines that petitioner's claim 21 fails.

        o.      Claim 22

In claim 22, petitioner contends that at both of his trials the court erred by failing to preserve translations of court proceedings into the Slavic language, thereby preventing him from demonstrating that some of the translation was erroneous. (Mot. to Vacate (DE 2224-1) at 63-64). He alleges that such errors confused him and resulted in his "misunderstand[ing] most of trial procedure and fail[ing] to properly act in his defense." Id. at 63.

The magistrate judge recommends denying this claim in that it is "unduly conclusory," stating

> [Petitioner] does not identify in any way the purported mistranslations at issue, including when they occurred or their subject matter. More specificity was required and petitioner could reasonably be expected to have provided it whether or not there are records of the translations he was provided. Further, the notion that petitioner misunderstood most of the trial procedure and failed to act properly because of such misunderstanding is flatly contradicted by petitioner's active participation in both trials, as well as his numerous filings. Moreover, to the extent he did actually have misunderstandings resulting from mistranslations, petitioner had stand-by counsel available to rectify his understanding.

(M&R (DE 2261) at 14).

Petitioner provides no specific objections but reiterates "almost all of trial procedure was mistranslated," arguing he is unable to prove this for the very reason that the trial court incorrectly failed to preserve translations. (Objs. to M&R (DE 2265) at 31-32).

Here, as pointed out by the magistrate judge, the record is replete with petitioner understanding and effective utilization of trial procedure. Therefore, petitioner's claim 22 fails.

        p.      Claim 23

In claim 23, petitioner alleges that the court erred by interrupting his allocution during sentencing. (Mot. to Vacate (DE 2224-1) at 65).

The magistrate judge rightly concluded that the court manifestly gave petitioner great leeway in allocuting, not only as to the time allowed but also as to the subject matter covered. (See, e.g., Sentencing Tr., August 24, 2012 (DE 2179) at 108-85). The statements by the court during the allocution reasonably sought to focus petitioner's comments on issues relevant to sentencing (see, e.g., id. at 122-23, 129, 131) and to prevent the allocution from continuing for an excessively lengthy period (see, e.g., id. at 169, 177).

Petitioner fails to raise specific objections to the magistrate judge's recommendation, and the court holds that petitioner's claim 23 is without merit.

       q.    Claim 24

In claim 24, petitioner contends that the court erred by imposing an unreasonably lengthy term of imprisonment on the terrorism counts-180 months on count one and 360 months on count two, running concurrently-stating that he will be 63 years old when released. (Mot. to Vacate (DE 2224-1) at 66).

As correctly point out by the magistrate judge, and not specifically objected to by petitioner, this claim fails in part because it is unduly conclusory, and petitioner fails to state any reason why the term is unreasonable beyond his projected age at release. Additionally, petitioner's term of 360 months was below the top of the guideline range, life imprisonment. (See Sentencing Tr., August 24, 2012 (DE 2179) at 101; PSR (DE 2089) ¶ 92).

Petitioner's claim 24 fails.

       r.    Claim 25

In claim 25, petitioner contends that the court erred in applying the terrorism enhancement in calculating petitioner's advisory guideline range on the terrorism counts. (Mot. to Vacate (DE

2224-1) at 67; see PSR (DE 2089) ¶¶ 40, 69).[21]

Again, the magistrate judge correctly concludes that this claim fails because a challenge to the advisory guideline range may not be brought in a § 2255 proceeding. See Newbold, 791F.3d at 459 (citing Foote, 784 F.3d at 932-33, 940-43).

Although petitioner does not specifically object to the magistrate judge's conclusion that challenges to the advisory guidelines cannot be brought in 2255 proceedings, he does argue that the magistrate judge misconstrued his claim. Petitioner asserts that his claim is not that the court erred in applying the terrorism enhancement, but that the court erred in that it "did not explain on the record on what facts court relied on beyond that authorized by the jury in imposing terrorism enhancement." (Objs. to M&R (DE 2265) at 35).

Turning to the sentencing hearing, petitioner, the government, and the court engaged in a lengthy discussion as to this enhancement, wherein specific applicable facts were discussed, which undermines petitioner's argument that the court did not explain on the record what facts were relied upon in imposing this enhancement. (See, e.g., Sentencing Tr., August 24, 2012 (DE 2179) at 19-37).

Petitioner's claim 25 fails.

3.    Petitioner's ineffective assistance of appellate counsel claims are without merit.

---

[21] Petitioner speaks generally of the terrorism enhancement; however at issue during sentencing were two "terrorism enhancements," one pursuant to U.S.S.G. § 3A1.1(a) which the court sustained petitioner's objection to as recommended in the PSR and did not impose, and one pursuant to U.S.S.G. § 3A1.4, to which petitioner currently objects and was applied by the court. (See Sentencing Tr., August 24, 2012 (DE 2179) at 13); see also U.S.S.G. § 3A1.1(a)("If . . . the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim or any property as the object of the offense of conviction because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person, increase by 3 levels"); U.S.S.G. § 3A1.4 ("If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32. (b) In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.").

As stated above, in order to establish ineffective assistance of counsel, a petitioner must satisfy a two-pronged test. See Strickland, 466 U.S. at 687. The Strickland test applies to claims that counsel in a direct appeal was constitutionally ineffective:

> The "right to effective assistance of counsel extends to require such assistance on direct appeal" as well as at trial. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir.2000) (en banc) (applying the Strickland standard to claims of ineffective assistance of counsel during appellate proceeding). We likewise presume that appellate counsel "decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir.1993). Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir.2008). As a general matter, "'only when ignored issues are clearly stronger than those presented'" should we find ineffective assistance for failure to pursue claims on appeal. Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)).

United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014). To show prejudice on a claim of failure to raise issues on appeal, "a petitioner must establish 'a reasonable probability . . . he would have prevailed' on his appeal but for his counsel's unreasonable failure to raise an issue." United States v. Rangel, 781 F.3d 736, 745 (4th Cir. 2015) (quoting Robbins, 528 U.S. at 285-86 (2000)).

   a.   Ineffective assistance of appellate counsel claims based on claims 1-25 are without merit.

Petitioner alleges in his objections to the M&R that his appellate counsel was ineffective for failing to argue each of the 25 claims addressed above.[22] Additionally, petitioner attached to his §2255 motion a letter, dated May 3, 2013, which petitioner purportedly sent to his appellate counsel setting out the claims that counsel failed to pursue. (See Mot. to Vacate (DE 2224-4)). As found by the magistrate judge, the issues presented in petitioner's letter are in essence the same as those

---

[22] Petitioner's appellate counsel argued two claims before the Fourth Circuit on direct appeal: 1) the admission of foreign records of his prior criminal charges and convictions at his immigration trial and 2) the court's recognition of government witness Evan Kohlmann as an expert in Islamic extremism and allowance of his testimony at the terrorism trial. See Subasic, 568 F. App'x at 235.

petitioner asserts in his § 2255 motion.  (M&R (DE 2261) at 17).[23]

Except for claims 14 and 16, the court has found each of petitioner's claims without merit. Therefore, petitioner's claims that appellate counsel failed to raise these argument on direct appeal likewise fail.  See Robbins, 528 U.S. at 288 (citation omitted) (generally, "only when ignored issues are clearly stronger than those presented" should we find ineffective assistance for failure to pursue claims on appeal).  Similarly, petitioner has failed to show that there is a reasonable probability that he would have prevailed on appeal if counsel had pursued the issues not already addressed by the Fourth Circuit.  Thus, petitioner has failed to satisfy both prongs of the Strickland test.[24]

Regarding petitioner's claims 14 and 16, which are not cognizable on § 2255 motion, petitioner's claim for ineffective assistance of appellate counsel for failure to bring these claims on direct appeal fails in that petitioner has failed to show he has a meritorious Forth Amendment claim concerning either claim 14, regarding the evidence procured against petitioner pursuant to the FISC order, or claim 16, regarding the evidence procured against petitioner pursuant to two search warrants, one issued to ICE and one issued to the FBI.

Regarding the former, as previously stated, the court analyzed petitioner's constitutional challenges to FISA, rejecting petitioner's arguments, and carefully engaged in a review of the evidence in question, which "compel[led] the conclusion that defendants' motions to suppress FISA-

---

[23] Perhaps the only claim raised by petitioner in his letter addressed to appellate counsel that may not be encompassed by his present filings to this court is petitioner's argument, labeled claim "2n," that the government "knowingly permitted their witnesses to commit material prejudice purgeries," regarding witnesses Alvis Harris and Abdullah Eddarkoui's testimony that they witnessed petitioner holding a gun at co-defendants' residence, and that appellate counsel was ineffective for failing to bring this claim to the Fourth Circuit on direct appeal.  (Mot. to Vacate (DE 2224-4) at 20).  This claim also fails on the merits and thus cannot provide a basis for an ineffective assistance of counsel claim. A conclusory statement that the government is guilty of misconduct is not sufficient for relief; petitioner fails to establish either these witnesses lied or the government knowingly allowed these witnesses to do so.  See United States v. White, 238 F.3d 537, 540-41 (4th Cir. 2001).

[24] Likewise, petitioner also fails to establish the cause and prejudice necessary to avoid the procedural bar against assertion in this § 2255 proceeding of the various claims he identifies for not having raised them in his direct appeal. See Pettiford, 612 F.3d at 280.

derived evidence and to disclose FISA applications and orders must be denied." (DE 1174 at 10-15); see also Elshinawy, 2017 WL 1048210, at *8. Petitioner offers no reason to question the court's holding. Similarly, regarding the latter, petitioner offers no reason why the court's holding should be questioned, that both warrants provided sufficient information for a determination of probable cause and none of the exceptions found in United States v. Leon, 468 U.S. 897,919 (1984) apply. (See DE 1419 at 5).

Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, it "is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477 U.S. 527, 536 (1986). Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." Pruett, 996 F.2d at 1568. Finally, petitioner still bears the burden to show that there is a reasonable probability that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different, which petitioner has failed to show in the present case. See Robbins, 528 U.S. at 285-86.[25]

      b.      Petitioner's remaining ineffective assistance of appellate counsel claims are without merit.

Petitioner additionally asserts, in his objections to the M&R, the following general claims regarding his appellate counsel: 1) appellate counsel acted as "amicus curiae" and not as an advocate, rending his appellate brief meaningless, 2) counsel "ignored all my efforts to work with him on appeal and to discuss potential strategies," 3) counsel "did not provide [the] type of effective assistance to render appellate proceedings fair," 4) counsel's "actions were not supported by

---

[25] The court departs from the magistrate judge's reasoning by analyzing petitioner's ineffective assistance of counsel claims based on claims 14 and 16 separately from the other claims. (See M&R (DE 2261) at 17 (recommending dismissal of all ineffective assistance claims as based on meritless claims)).

reasonable strategy . . . thus his errors are prejudi[cial]," 5) counsel's ineffective assistance "undermined proper functioning of adversarial process, thus appellate procedure cannot be relied as having produced just results," and 6) counsel "never provided to me any discovery . . . thus I could not present any issues related to such issues, evidences on this 2255 motion." (Objs. to M&R (DE 2265) at 36-37).[26]

These vague arguments demonstrate neither deficiency of counsel nor resulting prejudice, particularly when viewed in light of the deference this court affords to counsel's performance and in that petitioner has failed to allege a meritorious claim that appellate counsel failed to present to the Fourth Circuit on direct appeal.[27]

In sum, petitioner's claims of ineffective assistance of both appellate and stand-by counsel are without merit.

C.      Certificate of Appealability

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner must demonstrate that reasonable jurists could debate whether the issues presented should have been decided differently or that they are adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).  After reviewing the claims presented on collateral review in light of the applicable standard, the court finds that a certificate of appealability

_____

[26] Petitioner also incorporates by reference his supporting filings accompanying his § 2255 motion and his motions to the Fourth Circuit including his motion to strike appellate counsel's brief and proceed pro se. (Objs. to M&R (DE 2265) at 37).

[27] Petitioner does not address the magistrate judge's recommendation as to petitioner's arguments that appellate counsel 1) did not read the trial transcript, 2) mis-characterized in the opening brief of the court as finding foreign records authentic pursuant to Fed. R. Evid. 902, whereas the court actually relied on Rule 901, and 3) incorrectly attributed public records to the "state of Serbia instead [of] to Republic of Srbska of Bosnia and Herzegovina." (See M&R (DE 2261) at 18-19).  The court has reviewed the magistrate judge's reasoning and recommendations as to these claims and, finding no error, adopts the magistrate judge's recommendations.

is not warranted.

## CONCLUSION

For the foregoing reasons, the court ADOPTS the recommendation of the M&R. The government's motion to dismiss (DE 2231) is GRANTED, and petitioner's motion to vacate, set aside, or correct his sentence (DE 2224) is DENIED. A certificate of appealability is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 31st day of July, 2018.


LOUISE W. FLANAGAN
United States District Judge